**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 16, 2017
Decided March 9, 2017

**Before**

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 16-3439

| | |
|---|---|
| SHEENA MCMILLON, <br>     *Plaintiff-Appellant*, <br><br> v. <br><br> JOANNA REINSTEIN, et al., <br>     *Defendants-Appellees*. | Appeal from the United States District Court for the Eastern District of Wisconsin. <br><br> No. 2:15-CV-00780 <br><br> Nancy Joseph, <br> *Magistrate Judge*. |

**O R D E R**

Sheena McMillon claims that her constitutional rights were violated on three separate occasions when she was fired by IRIS Financial Services Agency ("IRIS") in 2012, when she was suspended from her job as a pharmacy technician at Walgreens in 2012, and when her license to operate a child care center was revoked by the Wisconsin Department of Children and Families ("DCF") in 2015. Perhaps McMillon is a victim of some unconstitutional action. The problem is that the case before us is against the City of Milwaukee and Joanna Reinstein, who at the time of the events in dispute was an employee of the City of Milwaukee. Neither defendant had any "authority or control"

over either McMillon's employment or her license, a fact which the district court relied upon to dismiss her 42 U.S.C. § 1983 action on the pleadings. For the reasons that follow and for the reasons set forth in the thorough opinion of the district court, we affirm the district court's judgment.

In 2012, Sheena McMillon and her mother, Cheryl Meeks, were employed by IRIS as home-care providers for Meeks' adult, disabled daughter L.M. (McMillon's sister). The record is unclear whether IRIS is a state or private agency, but the business arrangement is typical: IRIS serves as a conduit for Wisconsin state funds. In January 2012, Reinstein, an employee of Adult Protective Services, fielded a complaint that Meeks had neglected L.M. This triggered an investigation which led, apparently, to Reinstein concluding that McMillon had neglected and financially exploited her sister.

Reinstein subsequently notified IRIS of her conclusions, and IRIS terminated McMillon's employment. Reinstein allegedly also informed MaryKay Smet, McMillon's state licensing specialist, of her findings. Informing Smet allegedly resulted in two harms to McMillon. First, it resulted in Walgreens suspending McMillon's employment as a pharmacy technician. Second, it resulted in the Wisconsin state DCF revoking McMillon's license to operate a child care center three years later.

While the legal gloss on the dispute is somewhat unclear, the factual allegations are clear. McMillon alleges that Reinstein knowingly made a false internal report of abuse and then told both IRIS and a Wisconsin state employee about it. Spreading this misinformation caused reasonably foreseeable consequences: McMillon was terminated by IRIS; various Wisconsin state agencies learned the misinformation; and McMillon's private employer learned of the misinformation and suspended her. Had McMillon known of the false internal report, she would have requested a hearing to correct it.

On a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the district court rejected the notion that McMillon had suffered a deprivation of property or liberty without due process of law. Specifically, it held that McMillon did have a property interest in her child care license, but that it could not find that the named defendants had any "authority or control" over DCF and as such they were not personally responsible for depriving McMillon of her property. Just so. This is made all the more clear when considering the process McMillon asks for: notice and an opportunity to contest Reinstein's findings. Requiring such a hearing in this context would not solve McMillon's property deprivation, which is the subsequent revocation of her license under Wisconsin state law. Any process required before revoking a

license is provided for in Wisconsin state law and DCF procedures binding on DCF, not on Reinstein or the City of Milwaukee. If McMillon contends that DCF routinely relies upon unreliable evidence provided by municipal agencies when arbitrarily revoking licenses, the proper vehicle for that claim is a § 1983 lawsuit against DCF.[1]

The district court also rejected McMillon's argument that Reinstein and the City of Milwaukee had unconstitutionally deprived her of her liberty interest in her "good name, reputation, honor and integrity." As properly noted by the district court, this is not a cognizable liberty interest, but McMillon's job prospects are. If McMillon were stigmatized by publicly disclosed information, which caused her to "suffer[] a tangible loss of other employment opportunities," then she would have a claim for a deprivation of an occupational liberty interest. *Townsend v. Villas*, 256 F.3d 661, 669-70 (7th Cir. 2001). Such a claim seems the fairest reading of McMillon's allegations.

However, as correctly held by the district court, McMillon has alleged no public disclosure by Reinstein or the City of Milwaukee. Reinstein is alleged to have disclosed her findings to IRIS and to MaryKay Smet, a state regulator. Both disclosures are authorized by Wisconsin law. Wis. Stat. § 55.043(6)(b)(6); Wis. Stat. § 55.043(6)(b)(9). Any unauthorized disclosure of such reports is prohibited by Wisconsin law, so that Reinstein and the City of Milwaukee cannot be considered to have made any "public disclosure." To the extent McMillon alleges that Smet or another Wisconsin state employee or agency made an unauthorized disclosure downstream, again, that entity represents the proper defendant. If each disclosure of Reinstein's report was authorized, perhaps McMillon believes the entire protective services regulatory scheme violates due process. It is clear, however, that both Reinstein and the City of Milwaukee could not be considered to have deprived McMillon of a liberty interest, so this claim was also properly dismissed.

Accordingly, for these reasons and those set forth in the district court's opinion, the judgment of the district court is AFFIRMED.

---

[1] It is true that this might lead to on-the-record inquiry into the facts of whether abuse actually occurred or not in a particular case.